IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Arthur Van der Vant, Individually and as a State Court Appointed Receiver in the Cook County Circuit Court, State of Illinois, Case Number 2019CH04967; Providence Bank & Trust, N.A. v. Genesis 1, LLC.<br><br>    Appellant,<br><br>    v.<br><br>Zane Zielinski, not Individually but as Chapter 7 Trustee of the Bankruptcy Estate of Genesis 1, LLC<br><br>    Defendant. | No. 21 C 6340 |

## Memorandum Opinion and Order

Arthur Van der Vant, in his individual capacity and as Receiver appointed by the Circuit Court of Cook County in a foreclosure action styled *Providence Bank & Trust, N.A. v. Genesis 1, LLC, et al.* Case No. 2019CH04967, seeks to appeal the bankruptcy court's order authorizing the Trustee to conduct an examination of Van der Vant pursuant to Fed. R. Bankr. P. 2004. For the reasons that follow, Van der Vant's motion to appeal is denied, and the Trustee's motion to dismiss the appeal for lack of jurisdiction is granted.

I.

In September of 2019, the Trustee filed a voluntary Chapter 7 bankruptcy petition on behalf of an entity called Genesis 1, LLC ("Genesis").[1] The Trustee had previously been appointed to administer the individual bankruptcy estates of Genesis's members, Chad Cutshall and Ronald Plonis, each of whom held a 50% interest in Genesis. Because the three bankruptcy cases involved "affiliates" as defined in the Bankruptcy Code, the cases were consolidated for procedural purposes, although the debtors' respective estates were to be administered separately as to all assets, claims, and creditors.

At the time of it bankruptcy, Genesis owned multiple rental properties throughout the Chicagoland area. The one at issue here is a housing property in Calumet City, Illinois, which was encumbered by a mortgage held by Providence Bank and Trust ("Providence"). In April of 2019, Providence filed the foreclosure action referenced above in connection with this property. The foreclosure proceedings were automatically stayed by Genesis's bankruptcy, but the stay was lifted on Providence's motion, which also requested that the Trustee abandon the property. Because the Trustee believed at the time (wrongly, it turned out) that Genesis

---

[1] The facts summarized here are drawn primarily from the bankruptcy court's recitation, and nothing in the parties' submissions suggests that they are in dispute.

2

had transferred ownership of the Calumet City property prior to its bankruptcy,[2] he did not oppose Providence's motion. The foreclosure action thus proceeded in state court, which appointed appellant Receiver for the property. In the exercise of his duties as Receiver, appellant began collecting rent from tenants of the Calumet City property.

At some point, the Trustee and Providence realized that Genesis still owned the Calumet City property. For various reasons, Providence asked the Trustee to sell the property, notwithstanding his previous abandonment on behalf of the Genesis bankruptcy estate. After finding a buyer agreeable to Providence and providing notice to appellant, the Trustee sought and received approval for the sale from the bankruptcy court. Appellant raised no objection to the sale. The sale of the Calumet City property ultimately fell through, but the Trustee found another buyer and again sought approval from the bankruptcy court. This time, appellant objected to the sale because he understood the terms of the transaction—the property would be sold "free and clear" of encumbrances—to extinguish his receiver's lien. In subsequent hearings, however, the Trustee expressed his intent to satisfy all obligations owed

---

[2] Ownership of the property was apparently difficult to ascertain, as Genesis's books and records reflected that the property had been transferred pre-petition, but no deeds or mortgages were recorded in connection with the putative transfer. Meanwhile, Cutshall and Plonis declined to answer questions about the transfers in the exercise of their Fifth Amendment privilege.

to appellant in his capacity as Receiver from the sale proceeds. Appellant withdrew his objection, and the sale was consummated on June 16, 2021, with the receiver's lien paid in full.

In the meantime, however, shortly before the sale was completed, appellant obtained an order in the state foreclosure proceedings releasing Providence from paying receiver's fees and assigning all money judgments he obtained from current and former tenants as Receiver to Arthur Van Der Vant individually. After learning from property's buyer that appellant continued to receive rent payments from tenants of the Calumet City property post-sale and after his receiver's lien was fully satisfied, the Trustee sought to clarify the nature of these payments through a Rule 2004 examination. The order granting that motion is what appellant asks me to review.

## II.

District courts have jurisdiction under 28 U.S.C. § 158(a) to review "final orders" of the bankruptcy court, which may be appealed as a matter of right, as well as interlocutory orders, which district courts may grant leave to appeal. Additionally, district courts are authorized, in the narrow circumstances established in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541 (1949), to review bankruptcy courts' non-final "collateral orders." *In re Dental Profile, Inc.*, No. 09 C 6160,

2010 WL 431590, at *2 (N.D. Ill. Feb. 1, 2010). These are the only avenues to jurisdiction available in this case.[3]

The Seventh Circuit, concurring with the "majority of courts that have considered the issue," has held that "orders granting or denying Rule 2004 examinations are, like discovery orders, interlocutory." *Vance v. Lester (In re Vance)*, 1998 U.S. App. LEXIS 28177, at *3 (7th Cir. 1998) (citing cases). Nevertheless, appellant argues that the order at issue here should be considered final on the authority of *Zedan v. Habash*, 529 F.3d 398 (7th Cir. 2008), because it resolves a "discrete dispute that, but for the continuing bankruptcy, would have been a stand-alone suit by or against the trustee." *Id*. at 402. There are several flaws in this argument.

First, the "discrete dispute" appellant identifies is "who is entitled to pre-closing and post-closing rents." Appellant's Mot., ECF 5 at ¶ 37. *See also* Appellant's Reply, ECF 14 at ¶ 1.c ("the underlying discrete dispute is as to who is entitled to pre-closing and post-closing rents [ether (sic) Van der Vant or PNC Realty]") (emphasis and alterations in original). But the Rule 2004 order

---

[3] 28 U.S.C. § 158(a)(2) also empowers district courts to hear appeals "from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title," but appellant does not invoke that provision.

5

did not "resolve" that question; it merely authorized the Trustee to seek information that would help him to evaluate it.

Second, appellant's reliance on *Zedan* is misplaced. the question in *Zedan* was whether the bankruptcy court's dismissal of an adversary action in the context of ongoing bankruptcy proceedings was a "final order" for purposes of § 158(a). The court answered that question in the affirmative, observing that "adversary proceedings frequently resolve legal issues that appear logically separate from the ordinary measures determined in the main bankruptcy proceeding." *Id*. at 403. *See also id*. at 402-03 ("A bankruptcy case is often a congeries of functionally distinct cases. The clearest example is that of the adversary action[.]") (quoting *In re Lopez*, 116 F.3d 1191, 1193 (7th Cir. 1997)). An order dismissing a self-contained adversary action is readily distinguishable from the Rule 2004 order at issue here, which does not amount to or even suggest a claim against appellant but merely authorizes discovery to help determine whether payments made to him may have affected the bankruptcy estates overseen by the Trustee.

For similar reasons, the bankruptcy court's Rule 2004 order also does not fit the narrow, "collateral order" exception under *Cohen*, which allows appellate courts to review an order "which finally determine[s] claims of right separate from, and collateral to, rights asserted in the action, too important to be denied

6

review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. The order at issue here merely authorizes discovery; it does not "finally determine" any rights at all.

Moreover, the "collateral order" doctrine requires a showing of "irreparable harm." *In re Dental Profile*, 2010 WL 431590, at *3 (N.D. Ill. Feb. 1, 2010) (citing *Matter of Devlieg, Inc.*, 56 F.3d 32, 34 (7th Cir. 1995) (irreparable harm is an "essential element of the collateral order doctrine")). Appellant's argument in this connection boils down to the assertion that the Rule 2004 order involves claims of rights between third parties, not between creditors and debtors that in the bankruptcy case. At most, this argument challenges the relevance of the discovery the Trustee seeks; it does not establish or even suggest that Receiver will suffer irreparable harm if required to submit to a Rule 2004 examination.

Finally, the Rule 2004 order does not satisfy the criteria district courts consider when deciding whether to entertain discretionary interlocutory bankruptcy appeals, which are those 28 U.S.C. § 1292(b) requires for interlocutory appeals from district courts. *See In re Dental Profile*, 2010 WL 431590, at *4 (citing *In re Automotive Prof'ls, Inc.*, 379 B.R. 746, 751 (N.D. Ill. 2007), and *Trustee of Jartan, Inc. v. Winston & Strawn*, 208 B.R. 898, 900

7

(N.D. Ill. 1997)). Section 1292(2) permits an interlocutory appeal when the appeal: "(1) involves a controlling question of law; (2) over which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). With respect to the first element, appellant argues that the Rule 2004 order involves a controlling question of law because "proper application of the controlling Illinois Mortgage Foreclosure Law" compels the conclusion that "past rents are property of the receivership estate, and [] present rents are the property of the buyer, not property of the bankruptcy estate." Appellant's Mot. at ¶ 58. But however Illinois Mortgage law would allocate ownership of the rents in question, the purpose of the Rule 2004 examination is to investigate the nature of the rent payments appellant received so that Trustee can determine their effect, if any, on the administration and disposition of the debtor's assets under *bankruptcy* law. That the answer may turn out to be "none," as appellant insists, does not, as he seems to believe, divest the bankruptcy court of authority to allow discovery on the issue. At all events, because I cannot determine at this stage how the information produced in response to the Rule 2004 order will affect the outcome of the litigation, I do not conclude that the appeal presents a controlling question of law. *See In re Dental Profile*, 2010 WL 431590, at *4 ("we cannot determine how the order and the

8

consequent Bankruptcy Rule 2004 examination will affect the outcome of the litigation until the information sought by the order is produced.").

With respect to the second element—the likelihood that the interlocutory order will be reversed on appeal—appellant's burden is particularly high in this context because "almost all interlocutory appeals from discovery orders...end in affirmance (the district court possesses discretion, and review is deferential)." *Reise v. Bd. of Regents of Univ. of Wisconsin Sys.*, 957 F.2d 293, 295 (7th Cir. 1992). For substantially the reasons discussed above, I conclude for that he has not carried it.

Finally, I am not persuaded that reviewing the bankruptcy court's Rule 2004 order is likely to speed up the litigation. The essence of appellant's exegesis concerning his entitlement to collect rent payments, which he has presented in several of his prolific filings in the bankruptcy court and in multiple appeals to the courts of this district, is that the issue is easily resolved based on documents he has already provided to the Trustee.[4] If that is so, then he should quickly be able to eliminate

---

[4] Since the bankruptcy court granted the Trustee's motion for a Rule 2004 order, appellant moved that court for: (i) reconsideration of the Rule 2004 Order; (ii) disqualification of the bankruptcy judge; (iii) a stay pending the instant appeal; (iv) reconsideration of the order denying his motion to disqualify judge; and (v) reconsideration of the order denying his motion for a stay pending appeal. Appellant filed an appeal of the bankruptcy court's denial of a stay pending the instant appeal, which Judge

9

any concerns the Trustee may have in the course of his Rule 2004 examination. On the other hand, uncertainty about the status of these payments creates a risk that the Trustee will be forced to spend additional time and money to ensure the proper administration of the bankruptcy estate.

### III.

For the foregoing reasons, the motion for leave to appeal is denied, and the appeal is dismissed for lack of jurisdiction.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 2, 2022

---

Coleman of this district dismissed for lack of jurisdiction *See* Case No. 22 C 653 (N.D. Ill. Mar. 11, 2022). Appellant also filed an appeal of the bankruptcy court's orders denying his motion to disqualify judge and denying his motion to reconsider the denial of his motion to disqualify. *See* Case No. 22 C 653 (N.D. Ill). That appeal, currently pending before Judge Kennelly, also features arguments concerning the appropriateness of the bankruptcy court's Rule 2004 Order.